UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD JOSEPH
KRUSKE,

                Plaintiff,

v.

ANDREW SAUL,
COMMISSIONER OF
SOCIAL SECURITY,[1]

              Defendant.

_____/

Civil Action No.: 18-13519
Honorable Paul D. Borman
Magistrate Judge Elizabeth A. Stafford

**REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 13, 14]**

      Plaintiff Ronald Joseph Kruske appeals a final decision of defendant

Commissioner of Social Security (Commissioner) denying his application

for disability insurance benefits (DIB) under the Social Security Act.  Both

parties have filed summary judgment motions, referred to this Court for a

report and recommendation under 28 U.S.C. § 636(b)(1)(B).  After review

of the record, the Court finds that the administrative law judge's (ALJ)

decision is supported by substantial evidence, and thus **RECOMMENDS**

---

[1] Under Federal Rule of Civil Procedure 25(d), Saul is the successor
defendant.

that:

- Kruske's motion [ECF No. 13] be **DENIED**;

- the Commissioner's motion [ECF No. 14] be **GRANTED**; and

- the ALJ's decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

## I.    BACKGROUND

### A.    Background and Disability Applications

Kruske was born on September 16, 1963, making him 51 years old on his alleged onset date of March 5, 2015.  [ECF No. 7-2, PageID.40, 49]. He has past work as a dentist.  [*Id.*, PageID.48].  He alleged disability because of porphyria.[2]  [ECF No. 7-3, PageID.95].

After the Commissioner denied his disability application initially, Kruske requested a hearing, which took place in October 2017, and during which he and a vocational expert (VE) testified.  [ECF No. 7-2, PageID.56-93].  In a May 2018 written decision, the ALJ found Kruske not disabled.

_____

[2] Porphyria is a genetic disorder resulting from a build up of natural chemicals that produce porphyrin in the body.  High levels of porphyrins can cause significant symptoms, such as severe abdominal pain, chest, leg or back pain, constipation or diarrhea, nausea and vomiting, muscle pain, tingling, numbness, weakness or paralysis, red or brown urine, anxiety, confusion, hallucinations, disorientation or paranoia, breathing problems, urination problems, heart palpitations, high blood pressure, and seizures. https://www.mayoclinic.org/diseases-conditions/porphyria/symptoms-causes/syc-20356066 (last visited on December 10, 2019).

[*Id.*, PageID.38-50].  The Appeals Council denied review, making the ALJ's

decision the final decision of the Commissioner, and Kruske timely filed for

judicial review.  [*Id.*, PageID.24-26; ECF No. 1].

### B.    The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful

activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months."

42 U.S.C. §§ 423(d)(1)(A).

The Commissioner determines whether an applicant is disabled by

analyzing five sequential steps.  First, if the applicant is "doing substantial

gainful activity," he or she will be found not disabled.  20 C.F.R. §

404.1520(a)(4).  Second, if the claimant has not had a severe impairment

or a combination of such impairments[3] for a continuous period of at least

12 months, no disability will be found.  *Id.*  Third, if the claimant's severe

impairments meet or equal the criteria of an impairment set forth in the

Commissioner's Listing of Impairments, the claimant will be found disabled.

*Id.*  If the fourth step is reached, the Commissioner considers its

---

[3] A severe impairment is one that "significantly limits [the claimant's]
physical or mental ability to do basic work activities."  § 1520(c).

assessment of the claimant's residual functional capacity, and will find the

claimant not disabled if he or she can still do past relevant work.  *Id.*  At the

final step, the Commissioner reviews the claimant's RFC, age, education

and work experiences, and determines whether the claimant could adjust to

other work.  *Id.*  The claimant bears the burden of proof throughout the first

four steps, but the burden shifts to the Commissioner if the fifth step is

reached.  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110

(6th Cir. 1994).

Applying this framework, the ALJ concluded that Kruske was not

disabled.  At the first step, she found that Kruske had not engaged in

substantial gainful activity since his alleged onset date.  [ECF No. 7-2,

PageID.40].  At the second step, the ALJ found that Kruske had the severe

impairments of porphyria and gastrointestinal disorder.  [*Id.*].  Next, the ALJ

concluded that none of his impairments, either alone or in combination, met

or medically equaled the severity of a listed impairment.  [*Id.*, PageID.42-

44].

Between the third and fourth steps, the ALJ found that Kruske had

the RFC to perform light work as defined by 20 C.F.R. § 404.1567(b),

except:

> [H]e is able to lift and/or carry up to 10 pounds frequently and
> up to 20 pounds occasionally. [He] is able to stand and walk for

> eight hours during an eight-hour workday…and sit for eight
> hours during an eight-hour workday. [He] is able to climb ramps
> and stairs frequently (as opposed to constantly), but he is
> unable to climb ladders, ropes, or scaffolds. [He] is able to
> frequently balance…,stoop, and kneel. [He] is able to crouch
> and crawl occasionally. [He] may never be exposed to
> dangerous machinery, hazardous heights, extreme cold,
> extreme heat, excessive vibration, or very loud noise. [He] can
> tolerate occasional exposure to atmospheric conditions,
> humidity, and wetness, but never in excessive amounts. [He] is
> unable to work at a production rate pace, such as on an
> assembly line. In addition to normal work breaks, [he] may be
> off task five percent of the workday. On an unscheduled basis,
> [he] may be absent four workdays during a six-month period.

[*Id.*, PageID.44]. At the fourth step, the ALJ concluded that Kruske could still perform his past relevant work as a dentist, as generally performed. [*Id.,* PageID.48]. Alternatively, the ALJ considered the final step in the sequential evaluation process. After considering Kruske's age, education, work experience, RFC, and the testimony of the VE, the ALJ determined that Kruske could perform work as an information clerk, mail clerk and counter attendant, jobs which exist in significant numbers in the national economy. [*Id.*, PageID.49].

## II. ANALYSIS

### A.

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc.*

*Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Kruske argues that the ALJ erred by discounting his treating physician's opinions, and by finding that he could return to his past work as a dentist. The Court finds that the ALJ's decision is supported by substantial evidence and recommends that it be affirmed.

**B.**

Kruske argues that the ALJ violated to treating physician rule by not giving controlling weight to the August 2017 opinions of his primary care physician, Jakub Malarz, M.D., about the limiting effects of his porphyria. The Court finds no error.

Before Dr. Malarz's opinions, in January 2015, Kruske reported episodes of abdominal pain, nausea, vomiting, neurological abnormalities, and abnormal porphyrin testing. [ECF No. 7-7, PageID.297, 315].

6

Although his laboratory results suggested porphyria cutanea tarda, a form of the disease which typically results in skin abnormalities, his symptoms were "more suspicious for an acute porphyria."  [*Id.*, PageID.455].  Later genetic testing revealed an anomaly which predisposes him to mercury toxicity.  [*Id.*].  A clinical geneticist, Angelika Erwin, M.D., Ph.D., opined that Kruske's extended occupational exposure to amalgam, which contains mercury, was a possible cause of his symptoms, especially because his symptoms improved after he stopped working.  [*Id.*, PageID.460].  Dr. Erwin acknowledged that laboratory testing did not support the theory of mercury toxicity as the cause of Kruske's symptoms, but she could not confirm that acute porphyria was the underlying cause of the symptoms without conducting a 24-hour urine test during an acute attack.  [*Id.*].

After a July 2015 exam, Dr. Malarz reported that Kruske had discontinued his dentistry practice and showed significant improvement to his symptoms after eliminating soy, gluten and alcohol from his diet.  [ECF No. 7-8, PageID.636].  Likewise, in a follow-up exam at the Cleveland Clinic, Kruske reported only one two-day acute attack of symptoms between May and October 2015, which occurred after consuming fish, beer and well-water during a day spent outdoors.  [ECF No. 7-7, PageID.453].  After that attack, Kruske eliminated cheese and items stored in plastic

(phenols) from his diet, and his intermittent nausea and abdominal pain became tolerable.  [*Id.*]. His neurological symptoms were "almost completely resolved" and he denied new symptoms. [*Id.*].  Dr. Malarz noted in March 2016 that Kruske was feeling much better, and that he was stable and had been for "quite some time." [ECF No. 7-8, PageID.631].  Kruske reported "feeling decent" in September 2016 and noted some improvements with his porphyria in September 2017.  [*Id.*, PageID.625, 628].

In his August 2017 statement about Kruske's history, symptoms, diagnoses and treatment, Dr. Malarz opined that Kruske was disabled from dentistry and all work, even sedentary low stress work, because he suffered acute attacks on a regular basis. [*Id.*, PageID.708-710].  Dr. Malarz opined that Dr. Kruske was "extremely limited" during a porphyria attack and was "very debilitated and lying down throughout the day because of symptoms."  [*Id.*, PageID.710].  Dr. Malarz also found that Kruske was limited in his ability to sit, stand, walk and lift even on his more functional days. [*Id.*].

## C.

The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions about the nature and severity of a

8

claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence. *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43. "Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors," and give appropriate weight to the opinion. *Gentry*, 741 F.3d at 723.

An ALJ who decides to give less than controlling weight to a treating physician's opinion must give "good reasons" for doing so to "make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)). This procedural safeguard not only permits "meaningful appellate review," but also ensures that claimants "understand the disposition of their cases." *Rogers*, 486 F.2d at 242-43 (internal quotation marks and citation omitted).

Here, the ALJ afforded Dr. Malarz's opinions little weight, finding they were contradicted by his own treatment notes, as well as Kruske's reported activities and the conservative treatment. [ECF No. 7-2, PageID.47-48].

9

In support of her conclusion, the ALJ cited Dr. Malarz's July 2015 treatment notes which reported Kruske as "doing quite well[,] without too significant of issues."  [*Id.*, PageID.46].  She also noted Dr. Malarz's comment that Kruske's neurological symptoms had "almost completely resolved" and "that his abdominal pain and nausea were manageable."  [*Id.*]   And the ALJ cited multiple notes from 2016 and 2017 showing Kruske "doing fairly decent" and having unremarkable abdominal examinations.  [*Id.*].

Kruske challenges the ALJ's conclusion that Dr. Malarz's treatment notes contradicted his opinions.  Kruske argues that the ALJ's citations to Dr. Malarz's treatment notes were "inappropriately selective" and thus do not fairly represent Dr. Malarz's treatment records or provide good reason to discount his opinions. [ECF No. 13, PageID.1024-1029].

Kruske emphasizes that the citation to the July 2015 report omits Dr. Malarz's notation of some "right upper quadrant pain," frequent abdominal pain and nausea, and "only minor hallucinations and occasional nerve pain…."  He also notes Dr. Malarz's March 2016 reference to some gastrointestinal issues and occasional confusion, but that Kruske's severe fatigue had significantly diminished.  Kruske then points to Dr. Malarz's September 2016 comments on his reported fatigue and weight loss, his

10

ongoing and sometimes difficult-to-control symptoms and the lack of a cure for porphyria.

Kruske contends that the uncited portions of Dr. Malarz's notes did not suggest "a clean bill of health," and revealed "ongoing issues." [ECF No. 13, PageID.1024-1025].  He argues that the ALJ left out critical details and minimized the import of the doctor's notes, citing a quote from the treatment records that his symptoms leave him "occasionally lying on the floor for quite some time."  [*Id.*].  But this quote is a recitation of the subjective complaints Kruske related to his treater, not a finding or observation from Dr. Malarz.  [*Id.*, PageID.1027; ECF No. 7-8, PageID.625].

Kruske also argues that the ALJ ignored a Cleveland Clinic progress note stating that he "had been having recurrent attacks of abdominal pain, diarrhea, and nausea, in addition to seizures and hallucinations, and that the attacks were increasing in frequency."  [ECF No. 13, PageID.1027, citing ECF No. 7-7, PageID.453].  But this note neither suggested that Kruske's condition was worsening nor justified Dr. Malarz's extreme limitations.  Instead, the note was an historical synopsis stating that Kruske had been referred to the Cleveland Clinic "because of recurrent attacks of abdominal pain, diarrhea, and nausea, occasionally occurring with seizures

11

and hallucinations. These have been increasing in frequency over the years." [ECF No. 7-7, PageID.453].  On the same note, a section labeled "Interval History" detailed Kruske's progressive improvement since his initial visit.  [*Id.*].  This noted improvement—just a single acute episode between May and October 2015—is consistent with the portions of Dr. Malarz's record cited by the ALJ.  [*Id.*].

The Court finds that the omissions highlighted by Kruske confirm that he continues to suffer symptoms of porphyria.  But they do not undermine the ALJ's conclusion that the overall record showed that Kruske's symptoms had improved, and were both manageable and stable.  Nor do Kruske's citations support Dr. Malarz's opinions calling for extreme limitations, including those for sitting, standing, walking and lifting, even when not suffering an acute attack.  Substantial evidence supports the ALJ conclusion that those opinions were contradicted by the cited treatment notes.

The ALJ also found that Kruske's reported activities were inconsistent with Dr. Malarz's extreme opinions.  Kruske argues that this conclusion ignores that fact that his symptoms could be better or worse such that his activity level varied.  According to Kruske, his ability to sometimes play hockey and golf or do yardwork was not inconsistent with the opinions of

12

Dr. Malarz, and thus did not provide good reason for discounting those opinions.  Yet, Dr. Malarz opined that Kruske was not only "extremely limited during…days when he is in an attack status" but was also limited in his ability to sit, stand, walk and lift "*on the more functional days.*" [ECF No. 7-8, PageID.710 (emphasis added)].  Krustke's strenuous activities, including hockey, yard work and golf, belie the opinion that he was limited in his ability to sit, stand, walk and lift when not suffering an acute attack.  This inconsistency is further support for the ALJ's decision to discount the weight given to Dr. Malarz's opinions.

A final reason cited by the ALJ for giving little weight to Dr. Malarz's opinions was that Kruske received only conservative treatment for his porphyria.  [ECF No. 7-2, PageID.47-48].  Although Kruske testified that he no longer sought hospital treatment during acute attacks because there is no treatment for porphyria, his records from the Cleveland Clinic suggest otherwise.  [ECF No. 7-2, PageID.68; ECF No. 7-7, PageID.482].  The history recorded in his initial visit to the Cleveland Clinic reflects that he once received a dextrose infusion in the ER during an acute attack, and that he felt better the next day.  [ECF No. 7-7, PageID.482].  This record also notes he has never received hematin, an intravenous therapeutic

agent for the treatment of acute forms of porphyria.[4]  [*Id*.].  Like Dr. Malarz's treatment notes and Kruske's reported strenuous activity, the lack of treatment for acute attacks of his porphyria undercuts the opinions of Dr. Malarz.  The ALJ's reliance on these inconsistencies was appropriate and satisfied the good reason requirement for discounting the treater's opinion.

**D.**

Kruske argues that substantial evidence does not support the ALJ's finding that he can perform his past work as a dentist.  The Commissioner conceded this point, noting that the VE expressed reservations about whether the *Dictionary of Occupational Titles* accurately described the mercury exposure and amount of vibration dentists encounter.  [ECF No. 14, PageID.1057].  But the Commissioner argues that Kruske is still not entitled to remand because substantial evidence supports the ALJ's alternative finding that he could perform the other light, unskilled jobs identified by the VE.  Kruske made no argument, aside from that relating to the treating physician opinion addressed above, that the alternative step-five finding was not supported by substantial evidence.  Thus, Kruske has failed to show an error that would require remand of this matter.

---

[4] *See* ncbi.nlm.nih.gov/pubmed/449661 (last visited on December 10, 2019).

14

## III.   CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that

Kruske's motion for summary judgment be [ECF No. 13] be **DENIED**; that

the Commissioner's motion [ECF No. 14] be **GRANTED**; and that the ALJ's

decision be **AFFIRMED**.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: December 31, 2019

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this

Report and Recommendation, but must act within fourteen days of service

of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ.

P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any

further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v.*

*Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*,

638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but

fail to raise others with specificity will not preserve all objections that party

might have to this Report and Recommendation.  *Willis v. Secretary of*

*HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection

must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

15

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 31, 2019.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
