UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD JOSEPH KRUSKE,

          Plaintiff,

v.

ANDREW SAUL, COMMISSIONER
OF SOCIAL SECURITY,

          Defendant.
_____/

Case No. 18-cv-13519

Paul D. Borman
United States District Judge

Elizabeth A. Stafford
United States Magistrate Judge

<u>OPINION AND ORDER: (1) OVERRULING PLAINTIFF'S OBJECTIONS (ECF NO. 18); (2) ADOPTING THE REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE ELIZABETH A. STAFFORD (ECF NO. 17); (3) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 13); (4) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 14); AND (5) AFFIRMING THE FINDINGS OF THE COMMISSIONER</u>

On December 31, 2019, Magistrate Judge Elizabeth A. Stafford issued a Report and Recommendation (R&R) addressing the cross-motions for summary judgment in this action. (ECF No. 17, R&R.) In the R&R, Magistrate Judge Stafford recommended that the Court deny Plaintiff's April 17, 2019 Motion for Summary Judgment (ECF No. 13), grant Defendant's May 17, 2019 Motion for Summary Judgment (ECF No. 14), and affirm the findings of the Commissioner.

Now before the Court are Plaintiff's Objections to the R&R. (ECF No. 18, Objections.) Defendant filed a timely Response. (ECF No. 19, Response.) Having

conducted a *de novo* review of the parts of the Magistrate Judge's R&R to which objections have been filed pursuant to 28 U.S.C. § 636(b)(1), the Court overrules Plaintiff's Objections, adopts the Magistrate Judge's R&R, and affirms the findings of the Commissioner.

### I.  BACKGROUND

Plaintiff Dr. Ronald Kruske worked as a dentist with his own practice until March of 2015. (ECF No. 7-2, Hearing Transcript, PgID 65–69.) He then left his practice due to complications with porphyria, which he had been diagnosed with in November of 2014. (ECF No. 7-2, Hearing Transcript, PgID 68–69.) Porphyria is the name of "a group of disorders that result from a buildup of natural chemicals that produce porphyrin." *Porphyria*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/porphyria/symptoms-causes/syc-20356066 (last visited June 10, 2020). "High levels of porphyrins can cause significant problems" such as severe abdominal pain, pain in the chest, legs, or back, constipation and diarrhea, nausea and vomiting, muscle pain, red or brown urine, mental changes including anxiety, confusion, hallucinations, disorientation or paranoia, and seizures. *Id.*

Kruske had experienced many of these symptoms throughout his life, but began experiencing acute outbreaks of symptoms more often in 2013, which increased to every two weeks to two months by April of 2014. (ECF No. 7-2,

2

Hearing Transcript, PgID 81–83; ECF No. 7-7, Erwin Note 1/21/15, PgID 297.) These acute outbreaks included "severe abdominal pain accompanied by nausea, vomiting, constipation, diarrhea, psychiatric, and neurological symptoms," as well as pain in his right thigh, confusion, and increased anxiety. (ECF No. 7-7, Malarz Note 2/4/15, PgID 411.) Kruske described his acute attacks as "like a really, really bad flu with a dose of chemo therapy on top of it." (ECF No. 7-2, Hearing Transcript, PgID 71.) During the attacks he often sleeps between the toilet and the bathtub. (*Id.*)

His increased number of "recurrent episodes of neurovisceral symptoms, including confusion, abdominal pain, nausea, vomiting, and diarrhea" led him to seek diagnosis and treatment from a specialist, Dr. Angelika Erwin, at the Cleveland Clinic. (ECF No. 7-8, Erwin Letter, PgID 712.) Her testing revealed that he had indicators of porphyria cutanea tarda (PCT) and that he had a gene, CPOX4, that made him more susceptible to mercury intoxication. (*Id.*) As a dentist, he was frequently exposed to mercury through the daily use of amalgam, so Dr. Erwin hypothesized that many of his symptoms were related to chronic mercury exposure. (*Id.*) She recommended that he avoid all mercury exposure. (*Id.* at PgID 713.)

Kruske also noticed a worsening of his condition if he worked more than 20 or 30 hours a week at his dentistry practice. (ECF No. 7-7, Malarz Note 2/4/15, PgID 411.) In March of 2015 he fell on a patient while working, which prompted him to

3

take a medical leave and conclude that it was probably unsafe for him to continue practicing dentistry. (ECF No. 7-7, Malarz Note 3/20/15, PgID 408–09.) Accordingly, his alleged disability onset date is March 5, 2015. (ECF No. 7-2, ALJ Decision, PgID 40.)

Leaving his practice had an "almost immediate[]" effect on Kruske's health because it got him out of "the pattern of needing to sleep[] through the weekend." (ECF No. 7-7, Cleveland Note 10/8/15, PgID 453.) He then made further lifestyle changes to address his symptoms. In May of 2015, he eliminated soy and canola from his diet to address the "smoldering sick" feeling he had every day, and then got progressively better. (*Id.*) He also eliminated gluten and alcohol and limited his proteins to chicken and the occasional fish. (ECF No. 7-7, Malarz Note 7/7/15, PgID 406.) This change led to Kruske "doing fairly decently" and having fewer problems with his porphyria. (*Id.*) In fact, Kruske told the Cleveland Clinic, on October 8, 2015, that, since his last appointment in May, he had only one two day episode of vomiting/diarrhea, which happened after he was outside in the heat and consumed well-water, fish, and beer.[1] (ECF No. 7-7, Cleveland Note 10/8/15, PgID 453.) He then removed cheese, items wrapped in plastic, and other foods from his diet. (*Id.*)

---

[1] In July of 2015, Kruske reported to Dr. Malarz that he had gotten sick after consuming beer and a hamburger after playing golf—it is not clear if that was the same incident or a different one. (ECF No. 7-7, Malarz Note 7/7/15, PgID 406.)

Although Kruske improved as a result of lifestyle and diet changes, his symptoms did not disappear. On July 7, 2015, despite his noted improvement, he reported issues with "lighter colored stools, darker urine," and "right upper quadrant pain." (*Id.*) On October 10, 2015, Kruske told a doctor at the Cleveland Clinic that his neurological symptoms had almost completely resolved, but that he still had intermittent tolerable nausea and abdominal pain and intermittent bouts of red urine. (ECF No. 7-7, Cleveland Note 10/8/15, PgID 453.) On November 10, 2015, he reported both physical and psychological issues, especially after a large amount of physical activity, though he stated that he was otherwise "pretty stable." (ECF No. 7-8, Malarz Note 11/10/15, PgID 633.) Similarly, on March 14, 2016, Kruske reported that he was feeling a lot better and that his severe fatigue had "significantly diminished," though he still experienced "some gastrointestinal issues" and occasional confusion. (ECF No. 7-8, Malarz Note 3/14/16, PgID 633.)

In September of 2016, Kruske reported feeling "fairly decent" but that he was still having significant problems with fatigue and bouts of severe diarrhea, flu-like symptoms, and significant nausea. (ECF No. 7-8, Malarz Note 9/9/16, PgID 628.) He had also lost about 20 pounds since his last doctor's visit. (*Id.*) On his next visit, in March of 2017, Kruske indicated that he was "just making some improvements" with his porphyria treatments, though his bruising had returned, his metabolism was

5

still going through "10 to 14 day cycles of dysfunction," he still had periods of extreme fatigue, temperature regulation issues, hunger at inappropriate times, multiple chemical sensitivity, and did "end up occasionally lying on the floor for quite some time." (ECF No. 7-8, Malarz Note 3/9/17, PgID 625.)

Kruske applied for disability insurance benefits on July 16, 2015. (ECF No. 7-2, ALJ Decision, PgID 38.) His application was denied on January 27, 2016. (*Id.*) He then asked for a hearing, which was held on October 26, 2017 in front of Administrative Law Judge (ALJ) Sarah Zimmerman. (*Id.*) At the hearing, he testified that, since 2014, he had not gone more than 18 days without an acute attack of porphyria symptoms that would last between eight hours and two weeks. (ECF No. 7-2, Hearing Transcript, PgID 71.) He also testified that, on his good days, he "relentlessly" studies molecular biology, plays hockey in a recreational league—in the last season he played a "little over half" of the 30 scheduled games—and he occasionally plays golf. (*Id.* at PgID 77–78, 80.)

ALJ Zimmerman denied his application for disability insurance benefits on May 9, 2018. (ECF No. 7-2, ALJ Decision, PgID 50.) She found that he was not disabled because, based on his age, education, work experience, and residual functional capacity, he was capable of making a successful adjustment to work that

6

exists in significant numbers in the national economy.² (*Id.*) The Appeals Council denied review of ALJ Zimmerman's conclusion on September 8, 2018, (ECF No. 7-24–26, Appeals Council Letter, PgID 24–26) and Kruske requested a review of the Commissioner's decision by this Court on November 12, 2018. (ECF No. 1.) Magistrate Judge Stafford issued her R&R affirming ALJ Zimmerman's decision on December 31, 2019. (ECF No. 17.)

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1), the Court conducts a *de novo* review of the portions of the Magistrate Judge's R&R to which a party has filed "specific written objections" in a timely manner. *Lyons v. Comm'r of Soc. Sec.*, 351 F. Supp. 2d 659, 661 (E.D. Mich. 2004). A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* Only those objections that are specific are entitled to a *de novo* review under the statute. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). "The parties have the duty to pinpoint those portions of the magistrate's report that the district court must specially consider." *Id.* (internal quotation marks omitted). A general objection, or one that merely restates arguments previously

---

² ALJ Zimmerman also found that Kruske was capable of performing his past work as a dentist, a finding that Defendant Commissioner has conceded was not supported by substantial evidence and is therefore not now at issue.

7

presented, does not sufficiently identify alleged errors on the part of the magistrate judge. An "objection" that does nothing more than disagree with a magistrate judge's determination "without explaining the source of the error" is not a valid objection. *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

The Court's review of the findings of the Administrative Law Judge (ALJ) is limited to determining whether those findings are supported by substantial evidence and made pursuant to proper legal standards. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citing 42 U.S.C. § 405(h)); *see also Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). It is "more than a scintilla of evidence but less than a preponderance." *McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 522 (6th Cir. 2008) (internal quotation marks omitted). "If the Commissioner's decision is supported by substantial evidence, [the court] must defer to that decision, 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (quoting *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005)).

As to whether proper legal criteria were followed, a decision of the Social

Security Administration (SSA) supported by substantial evidence will not be upheld "where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546–47 (6th Cir. 2004)). SSA regulations establish a "five-step sequential evaluation process" for making a disability determination. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (See paragraph (b) of this section.)
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (See paragraph (c) of this section.)
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 to subpart P of part 404 of this chapter and meets the duration requirement, we will find that you are disabled. (See paragraph (d) of this section.)
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. See paragraphs (f) and (h) of this section and § 416.960(b).
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work

experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. See paragraphs (g) and (h) of this section and § 416.960(c).

20 C.F.R. § 416.920(a)(4). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

This Court does not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip*, 25 F.3d at 286. "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers*, 486 F.3d at 247; *see also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (noting that the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)).

### III.  ANALYSIS

Kruske filed two specific objections to Magistrate Judge Stafford's R&R. (ECF No. 18, Objections, PgID 1082–88.) First, he challenges Magistrate Judge Stafford's determination that ALJ Zimmerman did not err when she assigned little

weight to Dr. Jakub Malarz's opinion that Kruske was disabled from all work, as reflected in an August 2017 letter. (*Id.* at PgID 1082–85.) Second, he argues that the ALJ failed to explain why she determined that Kruske's symptoms would result in four to six absences in a six month period when the record contained "competing evidence regarding the frequency of [his] attacks." (*Id.* at PgID 1085–88.)

### A. Objection 1

Kruske's first objection challenges the ALJ's application of the "treating physician rule," which requires the ALJ "to give controlling weight to a treating physician's opinion as to the nature and severity of the claimant's condition as long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014) (quoting 20 C.F.R. § 404.1527(c)(2)). If the ALJ does not give controlling weight to the opinion, the ALJ must give "good reasons" for so doing. *Rogers*, 486 F.3d at 242. If the ALJ determines that the treating physician's opinion is not controlling, she must still consider the nature of the treatment relationship, the supportability of the physician's conclusions, and other relevant factors to determine how much weight to assign the physician's opinion. *Gentry*, 741 F.3d at 723. Regardless of the weight assigned to the physician's opinion on the nature and severity of the claimant's

11

condition, the physician's opinion that the claimant is disabled or unable to work is not entitled to any weight—that is a legal issue reserved for the Commissioner. 20 C.F.R. § 404.1527(d)(1); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

Magistrate Judge Stafford concluded that ALJ Zimmerman properly applied the treating physician rule because Dr. Malarz's treatment notes, which showed that Kruske's symptoms had improved, stabilized, and were manageable, and Kruske's participation in activities such as hockey and golf, contradicted Dr. Malarz's opinion that Kruske is disabled from all work because his attacks occur on a regular basis and even on his "more functional days" he is so limited in terms of sitting, standing, walking, and lifting that he cannot work in a "low stress sedentary occupation[]." (ECF No. 17, R&R, PgID 1073–77; ECF No. 7-8, Dr. Malarz Letter, PgID 710.)

Magistrate Judge Stafford's conclusion was correct. The record, including Dr. Malarz's treatment notes, indicates that Kruske's symptoms significantly improved after he left his dental practice and changed his diet. Kruske himself testified that his symptoms "definitely improved" between March 2015 and October 2017. (ECF No. 7-2, Hearing Transcript, PgID 83.) As Dr. Malarz noted, these improvements stabilized Kruske's condition and made it more manageable and tolerable. (*See* ECF No. 7-8, Malarz Note 11/10/15, PgID 633; ECF No. 7-8, Malarz Note 3/14/16, PgID 633; ECF No. 7-8, Malarz Note 9/9/16, PgID 628; ECF No. 7-8, Malarz Note 3/9/17,

12

PgID 625.) Dr. Malarz's notes and the record do also indicate that Kruske continued to have symptoms and, sometimes, totally debilitating days, (*see id.*) but the noted improvements and Kruske's testimony regarding his activities on good days are "good reasons" supported by substantial evidence for the ALJ to conclude that Dr. Malarz's opinion was not entitled to controlling weight.

The fact that Dr. Malarz acknowledged Kruske's improvement in his opinion does not, as Plaintiff argues, undermine this conclusion because Dr. Malarz's discussion of Kruske's improvement was conclusory. He stated that the attacks occur on a less frequent, but still regular basis. (ECF No. 7-8, Dr. Malarz Letter, PgID 710.) He did not indicate whether the symptoms were less severe during the attacks or how much less frequent they were, whereas his treatment notes and the notes from the Cleveland Clinic suggest that the instances of total debilitation, vomiting, nausea, and many of the neurological symptoms were greatly reduced. Thus, Dr. Malarz's acknowledgment that Kruske's attacks were less frequent does not adequately explain his conclusion that Kruske was limited even on his good days or that he was unable to do any work. Further, Dr. Malarz's opinion that Kruske was disabled from all work is on an issue reserved for the Commissioner and is not entitled to any weight. 20 C.F.R. § 404.1527(d)(1); *Bass*, 499 F.3d at 511. Magistrate Judge

13

Stafford properly concluded that the ALJ did not err in assigning little weight to Dr. Malarz's August 2017 opinion. Accordingly, the Court overrules this objection.

### B. Objection 2

In his second objection, Kruske faults Magistrate Judge Stafford for failing to reconcile the competing evidence regarding the frequency of his acute outbreaks. (ECF No. 18, Objections, PgID 1085–88.) This failure, according to Kruske, undermined Magistrate Judge Stafford's conclusion regarding the application of the treating physician rule and was in violation of Sixth Circuit case law, which requires the ALJ to consider the frequency of exacerbations of episodic diseases. (*Id.* (citing *Wilcox v. Sullivan*, 917 F.2d 272, 277 (6th Cir. 1990)).)

Kruske's second objection fails for two reasons. First, as discussed above, ALJ Zimmerman provided "good reasons" for assigning little weight to Dr. Malarz's opinion, and those reasons are not undermined by Kruske's testimony that he experienced acute exacerbations of symptoms at least every 18 days. (ECF No. 7-2, Hearing Testimony, PgID 71.) As Magistrate Judge Stafford noted, between March and October 2015 Kruske reported only one exacerbation that involved vomiting and diarrhea, (ECF No. 7-7, Cleveland Note 10/8/15, PgID 453; ECF No. 7-7, Malarz Note 7/7/15, PgID 406), which casts doubt on Kruske's testimony regarding the frequency of his most severe symptoms. His later reports of "10 to 14 day cycles of

14

dysfunction," periods of extreme fatigue, temperature regulation issues, hunger at inappropriate times, and multiple chemical sensitivity indicate that Kruske did experience cyclical exacerbations, but that the exacerbations that leave him debilitated and lying on the floor were more occasional. (*See* ECF No. 7-8, Malarz Note 3/9/17, PgID 625.) Thus, Magistrate Judge Stafford justifiably found substantial evidence for discounting Dr. Malarz's opinion.

Second, Kruske waived the issue of whether the ALJ violated controlling law by omitting a discussion of the frequency of his exacerbations when he failed to raise that argument until his objections to the R&R. *See Swain v. Comm'r of Soc. Sec.*, 379 F. App'x 512, 517–18 (6th Cir. June 7, 2010). Kruske, in his Motion for Summary Judgment, argued that the ALJ misapplied the treating physician rule and that the ALJ erred in finding that Kruske could return to his past relevant work, but did not argue that the ALJ erred by failing to acknowledge the frequency of Kruske's attacks. (ECF No. 13, Motion for Summary Judgment, PgID 1008–30.) It is now too late to raise this issue. The Court therefore overrules Kruske's second objection.

## IV. CONCLUSION

For all of the reasons stated above, the Court hereby: (1) OVERRULES Plaintiff's Objections (ECF No. 18); (2) ADOPTS the Report and Recommendation of Magistrate Judge Stafford (ECF No. 17); (3) DENIES Plaintiff's Motion for

Summary Judgment (ECF No. 13); (4) GRANTS Defendant's Motion for Summary Judgment (ECF No. 14); and (5) AFFIRMS the findings of the Commissioner.

IT IS SO ORDERED.

Dated: June 12, 2020                  s/Paul D. Borman
                                                  Paul D. Borman
                                                  United States District Judge